**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **WSOU Investments, LLC d/b/a Brazos Licensing and Development**,<br><br>      Plaintiff,<br><br>      v.<br><br>**NEC Corporation**,<br><br>      Defendant. | Case No.: 6:20-cv-00923-ADA<br>Case No.: 6:20-cv-00924-ADA<br>Case No.: 6:20-cv-00925-ADA<br>Case No.: 6:20-cv-00926-ADA<br>Case No.: 6:20-cv-00927-ADA<br><br>**Jury Trial Demanded** |

**NEC'S OPPOSED MOTION FOR RECONSIDERATION OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S OPENING CLAIM CONSTRUCTION SUBMISSION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. SUMMARY OF THE RELEVANT FACTS ..................................................................... 2
III. STANDARD OF REVIEW ................................................................................................. 4
    A. Motions for Reconsideration ................................................................................... 4
    B. Motions To Strike .................................................................................................... 5
IV. ARGUMENT ....................................................................................................................... 5
    A. WSOU Did Not Seek To Strike NEC's Opening Claim Construction Brief, And There Is No Basis To Strike It Entirely ............................................................ 5
    B. Appendices A and B to NEC's Brief Identify Terms That Must Be Construed And Should Not Have Been Struck .................................................... 6
    C. There Is No Prejudice ............................................................................................... 9
    D. NEC Was Denied an Opportunity To Respond to WSOU's Motion To Strike ..................................................................................................................... 10
V. CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*AFG Indus., Inc. v. Cardinal IG Co.*,
 239 F.3d 1239 (Fed. Cir. 2001) ...................................................................................................7

*Austin v. Kroger Texas, L.P.*,
 864 F.3d 326 (5th Cir. 2017) ......................................................................................................4

*Barron v. Fed. Reserve Bank of Atlanta*,
 129 F. App'x 512 (11th Cir. 2005) .............................................................................................5

*Breeden v. Vons Cos., Inc.*,
 No. 2:11-cv-01785-KJD-VCF, 2013 WL 1628385 (D. Nev. Apr. 15, 2013) .............................4

*Hawkins v. Montague County*,
 C.A. No. 7:10-cv-19-O, 2011 WL 13229004 (N.D. Tex. Feb. 28, 2011) ..................................4

*Kemco Sales, Inc. v. Control Papers Co.*,
 208 F.3d 1352 (Fed. Cir. 2000) ...............................................................................................6, 7

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
 628 F.3d 1359 (Fed. Cir. 2010) ...................................................................................................8

*Martin Braun, S.A. v. Time Cent., Inc.*,
 A-10-CA-619 LY, 2010 WL 11652135 (W.D. Tex. Dec. 13, 2010) ..........................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
 521 F.3d 1351 (Fed. Cir. 2008) ..........................................................................................1, 2, 6

*Rivera v. Laredo Petroleum, Inc.*,
 C.A. No. 7:19-CV-0005-DC-RCG, 2019 WL 6048003 (W.D. Tex. Aug. 15,
 2019) ...........................................................................................................................................5

**STATUTES**

35 U.S.C. § 112, ¶6 ..........................................................................................................2, 3, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(b) ............................................................................................................................4

**TABLE OF EXHIBITS**

| Ex. | Dkt. 29 Ex. No. | Description |
|---|---|---|
| A | | Defendant NEC Corporation's Opening Claim Construction Brief |
| A-1 | Ex. 1 | Expert Declaration of Dr. Matthew Shoemake |
| A-2 | Ex. 2 | U.S. Patent No. 7,577,103 |
| A-3 | Ex. 3 | U.S. Patent No. 7,885,398 |
| A-4 | Ex. 4 | U.S. Patent No. 8,041,017 |
| A-5 | Ex. 5 | U.S. Patent No. 8,103,213 |
| A-6 | Ex. 6 | U.S. Patent No. 9,065,918 |
| A-7 | Ex. 7 | File History of U.S. Patent No. 8,041,017 |
| A-8 | Ex. 8 | File History of U.S. Patent No. 8,103,213 |
| A-9 | Ex. 9 | WSOU's July 19, 2021 Proposed Claim Terms for Construction |
| A-10 | Ex. 10 | Exhibit A to WSOU's Aug. 5, 2021 Disclosure of Preliminary Claim Constructions |
| A-11 | Ex. 11 | WSOU's Aug. 19, 2021 Revised Preliminary Claim Constructions |
| A-12 | Ex. 12 | WSOU's Aug. 30, 2021 Updated Preliminary Claim Constructions |
| A-13 | Ex. 13 | July 7, 2021 Letter from S. Yothers to J. Waldrop Re: C.A. No. 6:20-CV-923 |
| A-14 | Ex. 14 | July 7, 2021 Letter. from S. Yothers to J. Waldrop Re: C.A. No. 6:20-CV-924 |
| A-15 | Ex. 15 | Aug. 25, 2021 Email from J. Whitehill Re: Exchange of claim constructions |
| A-16 | Ex. 16 | Excerpt from George McDaniel, IBM Dictionary of Computing (10th ed. 1994) |
| A-17 | Ex. 17 | Excerpt from Harry Newton, Newton's Telecom Dictionary (21st ed. 2005) |
| A-18 | Ex. 18 | Excerpt from Microsoft Computer Dictionary (Alex Blanton & Sandra Haynes eds., 5th ed. 2000) |
| A-19 | App. A | Appendix A to Defendant NEC Corporation's Opening Claim Construction Brief Regarding Additional § 112, ¶ 6 Terms |
| A-20 | App. B | Appendix B Supplemental Declaration of Dr. Matthew Shoemake, Ph.D. Regarding Claim Construction |
| B | | September 2, 2021 email exchange among the parties and the Court |
| C | | email exchanges between counsel for the parties |
| D | | email exchanges between counsel for the parties |
| E | | email exchanges between counsel for the parties |
| F | | September 22, 2021 email exchange among the parties and the Court |
| G | | email exchanges between counsel for the parties |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
| --- | --- |
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development |
| NEC | Defendant NEC Corp. |
| The Parties | NEC and WSOU |
| '103 patent | U.S. Patent No. 7,577,103 |
| '398 patent | U.S. Patent No. 7,885,398 |
| '017 patent | U.S. Patent No. 8,041,017 |
| '213 patent | U.S. Patent No. 8,103,213 |
| '918 patent | U.S. Patent No. 9,065,918 |
| The Asserted Patents | Collectively, the '103 patent, the '398 patent, the '017 patent, the '213 patent, and the '918 patent |
| MPF | means-plus-function |
| OGP | Order Governing Proceedings |

*Emphasis added unless indicated otherwise*.

I.     INTRODUCTION

NEC submits this Motion for Reconsideration of WSOU's Motion To Strike Defendant's Opening Claim Construction Submission (Dkt. 31). The Court granted WSOU's Motion to Strike without first allowing NEC the opportunity to be heard on the subject, which alone merits reconsideration under governing law. On the merits, moreover, the Court's decision to strike NEC's claim-construction brief as seeking to present too many claim-construction disputes is a basic deprivation of NEC's due-process right to mount an effective defense against WSOU's infringement claims. WSOU asserts *42 claims* containing 33 separate means-plus-function terms—16 of which WSOU even admits are means-plus-function limitations (and for two of which the parties were able to agree upon a construction). If WSOU is allowed to continue to press 42 separate claims of infringement, then NEC must be allowed to defend itself, and not have genuine claim-construction disputes left unresolved. Aside from the unfairness of such a procedure, it would be inefficient to forgo resolution of these many (indefinite) terms now—not to mention NEC's *other* claim construction arguments—simply because WSOU refuses to pare back its asserted claims to a reasonable number. The appendices of NEC's brief properly noted the existence of other claim-construction disputes (that would hopefully be mooted by the 16 terms presented in its opening brief), and so NEC's brief should not have been struck entirely, let alone in part. Binding Federal Circuit precedent mandates construction of means-plus-function limitations. To be sure, the Court may address these terms later on—and ***must*** before trial—*see, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). NEC submits that construing at least the 16 terms in its original brief will most efficiently narrow or eliminate these disputes. Many of these terms are suitable for resolution as a matter of law for indefiniteness, and NEC reserves its rights to move for judgment on the pleadings or for summary judgment regarding any terms unaddressed by the Court's claim-construction order.

## II.     SUMMARY OF THE RELEVANT FACTS

WSOU filed these five cases – each on a different, unrelated patent; and each on unrelated technologies – on September 23, 2020 (Dkt. 1). Each complaint identified a single exemplary claim. *See id*. On May 10, 2021, WSOU asserted the following 42 claims:

| Case No. | Patent No. | Asserted Claims | No. of Ind. Cls. |
|---|---|---|---|
| 6:20-cv-00923 | 7,577,103 | 1-7, 9, and 10 | 1 |
| 6:20-cv-00924 | 7,885,398 | 1, 10, and 13 | 3 |
| 6:20-cv-00925 | 8,041,017 | 1-3, 8-10, 16-17 and 20 | 3 |
| 6:20-cv-00926 | 8,103,213 | 1, 8, 22-26 | 7 |
| 6:20-cv-00927 | 9,065,918 | 1-9, 18-20 and 22-23 | 2 |

Ten of the asserted claims (8 of them independent) contain claim terms invoking 35 U.S.C. §112, ¶6 that, under Federal Circuit precedent, ***must*** be construed. Yet when the parties identified proposed claim terms requiring construction on July 19, 2021, WSOU identified ***none*** (Ex. A-9)[1] ("each term . . . should be given its plain and ordinary meaning"). Later, WSOU acknowledged that eleven terms in the '213 patent require construction pursuant to §112, ¶6 (Ex. A-10). And, even later, WSOU acknowledged that the five '017 patent terms identified by NEC were also subject to §112, ¶6 (Ex. A-15). Finally, three days before NEC's opening claim-construction brief was due, WSOU identified purported functions and allegedly supporting structure for ***all 33*** of the §112, ¶6 terms identified by NEC (Ex. A-12).

Nevertheless, WSOU requested that the Court incompletely construe only 15 terms across all five patents (Ex. B at 3). On September 1, 2021, the Court, through its law clerk, emailed the parties to indicate that "[i]n this situation, the Court will allow 16 terms, allot 45 pages for the Opening/Responsive briefing, and permit 25 pages for Reply/Sur-Reply" (Ex. B at 2). WSOU asked that NEC identify by the close of business on September 3, 2021 the 16

---

[1] "Ex.__" refers to exhibits attached to the Declaration of Stuart W. Yothers, filed herewith.

2

terms that NEC would submit for construction in its opening brief (Ex. C at 2).  NEC did so (Ex. C at 1).  WSOU did not object to those terms.

On September 10, 2021, NEC submitted its opening claim construction brief addressing these 16 terms.  Because there was no record before the Court addressing how all of the §112, ¶6 disputes created by WSOU's chosen asserted claims (31 in total) would ultimately be resolved in this proceeding, NEC's brief attached Appendices A and B and explained the following:

> The Court instructed the Parties that they should limit briefing to 16 terms.  This brief therefore addresses the 16 most significant terms to be heard at the *Markman* hearing.  However, NEC's understanding also is that unless rendered moot, the law requires all §112, ¶6 terms to be eventually construed by the Court.  (*See* Appendix A at 1–3.)  As a result, and to avoid any assertion of waiver or forfeiture by WSOU, NEC has attached as Appendix A its positions for all remaining §112, ¶6 terms.  As explained by Appendix A, NEC understands that ***these additional §112, ¶6 terms will not be heard at the Markman hearing, and NEC does not expect WSOU to address them at this time in WSOU's responsive brief***.  Indeed, if NEC's claim construction positions presented in this opening brief are adopted, then the constructions of most additional §112, ¶6 terms of Appendix A should indeed be moot due to the indefiniteness of their claims.

(Ex. A at 3 n.1).  A week after the brief was filed, WSOU requested a meet and confer to discuss its planned request to strike Appendices A and B (Ex. D at 2-3).  Given that Appendix A explained that none of the terms addressed therein needed to be briefed or heard at this time, NEC indicated that a much more efficient resolution would be a joint email to the Court seeking confirmation that WSOU need not address Appendix A in its responsive brief (Ex. E).  WSOU declined – preferring to mischaracterize the appendix as "[d]isregarding the Court's order" and "shoe-horn[ing] in an additional brief"—neither of which is true (Ex. F at 3).  Following that teleconference, WSOU sent to NEC a draft email to the Court seeking to strike Appendices A and B (Ex. D).  NEC responded that such relief could not be properly pursued via an email outside the record, and indicated that the parties should request a teleconference with the Court

3

(Ex. E). Nonetheless, WSOU emailed the Court asking that the appendices be struck on September 20, 2021 (Ex. F at 3).

Two days later, on September 22, 2021, the Court emailed the parties to indicate that the Court would strike NEC's opening claim construction submission *in its entirety* – even though WSOU only sought to strike two appendices (Ex. F). Moreover, the email indicated that "NEC is ORDERED to submit a new brief addressing all 14 agreed means-plus-function terms, along with 4 additional terms" – eliminating 8 of the 16 terms that the parties *agreed* to brief, that the Court's prior email allowed to be briefed, and that WSOU never requested be removed from NEC's brief. *Id*. Finally, the email instructed WSOU to file a motion to strike with a proposed order and to email the Court once the motion was filed. *Id*.

NEC notified WSOU that NEC opposed any motion to strike (Ex. G), and WSOU filed its motion indicating that the motion was opposed (Dkt. 31). Later that same day, the Court granted WSOU's motion without permitting NEC to file an opposition.

## III. STANDARD OF REVIEW

### A. Motions for Reconsideration

Interlocutory orders "may be revised at any time before the entry of [final] judgment." Fed. R. Civ. P. 54(b); *see also Hawkins v. Montague County*, C.A. No. 7:10-cv-19-O, 2011 WL 13229004, at *1 (N.D. Tex. Feb. 28, 2011). "[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration governing final orders." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (citation and internal quotations omitted). Courts will grant motions for reconsideration where one party did not have an opportunity to respond to or oppose the motion being reconsidered. *See, e.g.*, *Breeden v. Vons Cos., Inc.*, No. 2:11-cv-01785-KJD-VCF, 2013 WL 1628385, at *2 (D. Nev. Apr. 15, 2013) . Moreover, a party that did not

4

have the opportunity to respond to a motion that is granted risks waiving its objections for appeal if it does not seek reconsideration. *See, e.g.*, *Barron v. Fed. Reserve Bank of Atlanta*, 129 F. App'x 512, 520 (11th Cir. 2005).

### B. Motions To Strike

A motion to strike is a drastic remedy, which courts grant sparingly. *E.g.*, *Martin Braun, S.A. v. Time Cent., Inc.*, A-10-CA-619 LY, 2010 WL 11652135, at *2 (W.D. Tex. Dec. 13, 2010), *adopted*, 2011 WL 13324339 (W.D. Tex. Mar. 30, 2011). "A motion to strike generally should not be granted absent a showing of prejudice to the moving party." *Rivera v. Laredo Petroleum, Inc.*, C.A. No. 7:19-CV-0005-DC-RCG, 2019 WL 6048003, at *1 (W.D. Tex. Aug. 15, 2019) (citation and internal quotations omitted).

## IV. ARGUMENT

### A. WSOU Did Not Seek To Strike NEC's Opening Claim Construction Brief, And There Is No Basis To Strike It Entirely

As an initial matter, WSOU did not request that the Court strike NEC's brief in its entirety. Indeed, WSOU's motion to strike acknowledges that "[t]he opening brief itself addressed 16 claim terms, *in accordance with the Court's September 1, 2021 instructions*" (Dkt. 31 at 1). NEC's brief addressed the 16 disputed claim terms agreed upon by the parties, and as permitted by the Court. (Ex. A).

The Court's September 22, 2021 email indicating that NEC's opening submission would be struck in its entirety, apparently based this decision on its belief that NEC deployed an improper "tactic" in selecting the 16 terms for its opening brief (Ex. F). Not so. First, the Court's September 1, 2021 email allowing 16 terms did not identify or otherwise indicate which terms were to be briefed (Ex. B). And WSOU never objected to the 16 terms NEC selected. Second, NEC's selection was not "tactical"; it selected the 16 terms most likely to resolve, or at

5

least narrow, the disputed issues in these five cases. Because many of the means-plus-function terms appear in few claims, NEC selected potentially dispositive terms such that, depending upon the Court's ruling on the 16 presented terms, "the constructions of most additional §112, ¶6 terms of Appendix A should indeed be moot" (Ex. A at 3, n.1).

With the striking of NEC's opening brief, and the Order in the email from the Court to "submit a new brief addressing all 14 agreed means-plus-function terms, along with 4 additional terms" (Ex. F), 14 of the claim terms to be presented at the *Markman* will address only two claims of the '213 patent and three claims of the '017 patent. As WSOU still asserts 42 claims, the potential of narrowing the disputed issues is greatly reduced. NEC respectfully submits that, at a minimum, its opening brief should not have been struck and that the 16 terms that the parties previously agreed to should be construed during the upcoming *Markman* hearing.

  **B. Appendices A and B to NEC's Brief Identify Terms That Must Be Construed And Should Not Have Been Struck**

Appendices A and B (Exs. A-19 and A-20) did not require any response from WSOU, and they did not seek any action by the Court at this time. They were submitted solely to preserve the record. They too should not have been struck.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also id.* at 1362 n.3 ("[T]he court, and not the jury, should resolve claim construction disputes."). Failure to do so would be legal error. *Id.* at 1362–63.

This risk of reversible error is compounded for claim terms subject to construction under §112, ¶6, which are not amenable to a plain and ordinary meaning construction. "Once a court establishes that a means-plus-function limitation is at issue, it ***must*** construe that limitation, thereby determining what the claimed function is and what structures disclosed in the written

description correspond to the 'means' for performing that function." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000) (emphasis added).  Yet WSOU refused to acknowledge the black-letter law that the 31 means-plus-function disputes must be resolved prior to trial, and declined to propose to the Court a mechanism for doing so.  Instead, WSOU used the presumed limitations of the OGP to try to gain a tactical advantage and avoid disputes that it surely knows must be addressed.

With WSOU's unwillingness to jointly approach the Court with any meaningful proposal, and the Court's resolution of the number of terms to be construed having taken place off the record, there was no record reflecting NEC's position that any means-plus-function terms not addressed at the upcoming *Markman* hearing or mooted by the result of that hearing would need to be construed at a later time, prior to trial.  *See id.*; *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial.").  Faced with this predicament, NEC pursued what it thought was the most reasonable course of action – noting the issue on the record in an appendix (preserving the issue for later), but further noting that WSOU need not respond to the appendix (which was submitted solely to avoid any later argument by WSOU that NEC had waived construction of these terms by never indicating on the record that they required construction) and even further noting that NEC did not expect the Court to take up the appendix at the upcoming *Markman* hearing (Ex. A-19 at 2-5).

When WSOU objected to the appendix a week later, NEC again proposed "a joint submission acknowledging that these terms [addressed in the appendix] can be construed at a later time, if necessary, and that there is no waiver by reserving them until a later time" (Ex. E).

7

Knowing that means-plus-function terms require construction by the Court as a matter of law, and that NEC did not expect WSOU to respond to the appendix, nor the Court to address the terms in the appendix at the *Markman* hearing, WSOU mischaracterized the appendix in an email to the Court as "[d]isregarding the Court's order," "attempting to shoe-horn in an additional brief," and "attempt[ing] to obtain additional pages and terms" (Ex. F at 3). To the contrary, the purpose of Appendix A was expressed plainly on the face of the appendix, noting in particular that NEC acknowledged "the Court's authority to set reasonable limits on the number of terms to be construed during the *Markman* process" and that "NEC does not dispute that the Court has limited the upcoming *Markman* hearing to 16 terms, or its authority to do so" (Ex. A-19 at 2). NEC never requested that WSOU or the Court engage in anything more than the construction of the 16 terms the parties **agreed** to construe at the upcoming *Markman* hearing.

WSOU's motion to strike and this response could have been avoided if WSOU had simply been willing to acknowledge to the Court that if the terms presented in NEC's appendix were not mooted by the upcoming *Markman* hearing, the parties would discuss with the Court a procedure for resolving any remaining means-plus-function terms prior to trial. Because Appendix A and Appendix B did not seek to have WSOU or the Court address more than the 16 terms that the parties agreed to submit for construction, within the 45 pages of briefing permitted, NEC respectfully submits that NEC's appendices were properly submitted and that there is no legal (or factual) ground on which they should be struck.

Thus, NEC's inclusion of these terms in the appendices was a cautionary measure to avoid any potential waiver or forfeiture of its proposed constructions. *See, e.g., Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010). Because WSOU continues to assert 42 claims, more claim terms are in dispute than were permitted to be briefed

for the upcoming *Markman* hearing, and because there was no assurance or procedure on the record for construing these additional terms at some time prior to trial, NEC preserved its positions for these additional terms in an appendix on the record.

### C. There Is No Prejudice

WSOU's motion to strike does not allege any prejudice to WSOU (Dkt. 31). In its one-paragraph email to the Court requesting that NEC's Appendix A and Appendix B be struck, WSOU states that

> NEC's statement in Appendix A that it does not "assert or expect that WSOU need respond to this appendix and NEC's constructions of these additional § 112, ¶ 6 terms at this time, including not having to do so in WSOU's responsive claim construction brief" is plainly insufficient to remedy the extreme prejudice to WSOU imposed by NEC's violation of the Court's order.

(Ex. F at 3). But this allegation is contradicted by Appendix A, on its face, which states:

> In light of the Court's sixteen-term limit for the upcoming Markman hearing, NEC does not intend to seek leave to argue any of these additional § 112, ¶ 6 terms at that hearing. ***Nor does NEC assert or expect that WSOU need respond to this appendix and NEC's constructions of these additional § 112, ¶ 6 terms at this time, including not having to do so in WSOU's responsive claim construction brief.*** Again, resolution of the sixteen terms presented in the Court's allotted limits for the Markman hearing may moot the need to resolve many of the additional § 112, ¶ 6 issues set forth in the following pages (e.g., if one term in a given claim is found to be indefinite, the entire claim is invalid and no other terms in that claim may require resolution at this time). And, if it does become apparent that any of these additional § 112, ¶ 6 issues need to be addressed (e.g., if the case is to be tried), NEC will not oppose WSOU being granted leave to respond to this appendix and its additional issues at a time and in a manner instructed by the Court.

(Ex. A-19 at 4-5). In short, no response to the appendix was required, and NEC offered to jointly confirm as much with the Court. WSOU declined. There was never any prejudice to WSOU, and WSOU's motion to strike should be denied on this basis alone.

### D. NEC Was Denied an Opportunity To Respond to WSOU's Motion To Strike

When WSOU objected to the appendix a week after it was filed, NEC proposed "a joint submission acknowledging that these terms [addressed in the appendix] can be construed at a later time, if necessary, and that there is no waiver by reserving them until a later time" (Ex. E). WSOU declined and instead pursued—over NEC's objection (Ex. E)—an off-the-record email to the Court requesting that the appendices be struck on September 20, 2021 (Ex. F at 3). The Court indicated that it would strike NEC's opening claim construction brief entirely and instructed WSOU to file a motion to strike with a proposed order (Ex. F). WSOU filed its motion on September 23 (Dkts. 31) indicating—at NEC's request—that the motion was "opposed." The Court granted the motion that same day.

WSOU's request for relief outside of a formal motion was improper, as it denied NEC the opportunity to make its case on the record for why WSOU was not entitled to the relief it requested. This issue was then compounded by the Court's order granting the opposed motion on the day it was filed, thereby denying NEC the opportunity to file a responsive brief. *See* Local Rule CV-7(d)(2) (providing a party opposing relief the opportunity to respond "not later than 7 days after the filing of the motion"). Had WSOU not performed this end run to circumvent a hearing on the record, NEC would have been able to demonstrate (as it has above) that WSOU was not entitled to have the appendices—or the brief in its entirety—struck, and the motion to strike would have been denied.

### V.   CONCLUSION

For the foregoing reasons, NEC respectfully requests that the Court reconsider its order granting WSOU's motion to strike and restore NEC's opening claim construction submission to the docket. Pursuant to CV-7(G), NEC advises the court that the parties conferred and WSOU indicated that it opposes reconsideration of its motion to strike NEC's original submission.

Dated: September 27, 2021							Respectfully submitted,

*/s/ Hilda C. Galvan*
Hilda C. Galvan
Lead Attorney
Texas State Bar No. 00787512
Email: hcgalvan@jonesday.com
Keith B. Davis
Texas State Bar No. 24037895
Email: kbdavis@jonesday.com
JONES DAY
2727 N. Harwood Street, Suite 500
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Maxwell A. Fox
Email: mfox@jonesday.com
JONES DAY
Okura Prestige Tower 2-10-4 Toranomon
Minato-ku, Tokyo 105-0001, Japan
Telephone: (813) 6800-1876
Facsimile: (813) 5570-1520

Stuart Wesley Yothers
Email: syothers@jonesday.com
JONES DAY
250 Vesey Street New York, NY 10281
Telephone: (212) 326-3893
Facsimile: (212) 755-7306

*Attorneys for Defendant NEC Corporation*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served on all counsel of record on September 27, 2021 by CM/ECF for those counsel who have appeared in the above-captioned matters.

By: */s/ Hilda C. Galvan*
Hilda C. Galvan